NORTHERN PAC. RY. CO. v. HEATON.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1911.)

No. 3,563.

1. EVIDENCE (586*)—ACTION FOR INJURY AT CROSSING—CROSSING SIGNALS—WHEN QUESTION FOR JURY.

The testimony of a number of witnesses, whose attention was called to a railroad train as it approached a crossing at night, at which it struck and injured plaintiff, and who were near enough to have heard the crossing signals, if given, that they heard no such signals, is sufficient to sustain the finding of a jury that the signals were not given, notwithstanding the affirmative testimony. of the engineer and fireman that they were.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2432–2435; Dec. Dig. 586.*

Duty to give warning signals at crossing, see note to Chesapeake & O. Ry. Co. v. Steele, 29 C. C. A. 90.]

2. RAILROADS (§ 348*)—ACTION FOR INJURY AT CROSSING—PROXIMATE CAUSE OF INJURY—FAILURE TO GIVE CROSSING SIGNALS.

The fact that a plaintiff, a boy 12 years old, on approaching a railroad crossing at night, did not notice the lighted train by which he was struck and injured, does not establish as matter of law, and contrary to the verdict of a jury, that the failure to give the crossing signals, by bell and whistle, was not a proximate cause of the injury.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 348.*]

3. RAILROADS (§ 350*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

The care required of a minor on approaching a railroad crossing on a highway varies with his age, intelligence, and experience, and the fact that a boy less than 12 years old failed to see an approaching train at night, by which he was struck and injured, does not establish contributory negligence as matter of law, which will preclude a recovery for his injuries, although the train was lighted, and he could have seen it, if he had looked, from a time when the train was 1,600 feet from the crossing.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.*]

4. WITNESSES (§ 401*)—CROSS-EXAMINATION AS TO IRRELEVANT MATTERS—CONCLUSIVENESS OF ANSWERS.

Where counsel, on cross-examination of witnesses, ask questions as to matters which are entirely collateral and irrelevant to the issues, they are concluded by the answers, and the admission of testimony to contradict such answers is error.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1270; Dec. Dig. § 401.*]

In Error to the Circuit Court of the United States for the District of North Dakota.

Action at law by L. E. Heaton, as guardian ad litem of L. E. Heaton, Jr., against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

Heaton, a boy aged 11 years and 10 months, on the night of August 2, 1908, was riding on horseback along a public highway toward his home. This highway crossed the line of the railway of the plaintiff in error at grade and approximately at right angles. Heaton was familiar with this crossing, and generally with the operation of trains on the railway line. For some distance along the highway and up to the crossing, if he had looked to the east, he could have seen the train approaching in time to have avoided a collision. He testified that his attention was attracted by a light on the railway track

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

west of the crossing, and believed by him to be the headlight of an approaching locomotive. When he reached the crossing, he was struck and seriously injured by the locomotive of the railway train coming from the east. In his complaint to recover for this injury, he alleged, as a basis that the railway company failed to sound the whistle or ring the bell of the locomotive for the crossing, as required by the statute of North Dakota. Heaton recovered a verdict, and from the judgment thereon the railway company prosecutes this writ of error. At the conclusion of the evidence, the railway company requested a directed verdict in its favor, which was refused, and exception taken; and to this refusal error is assigned. Errors are also assigned to the refusal of other requested instructions, and to the rulings of the court in admitting certain testimony.

N. C. Young (Ball, Watson, Young & Lawrence, on the brief), for plaintiff in error.

John Knauf (Arthur L. Knauf, on the brief), for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and MARSHALL, District Judge.

MARSHALL, District Judge (after stating the facts as above). It is contended that the peremptory instruction requested should have been given for these reasons: (1) That there was no substantial evidence of the railway company's failure to give the statutory crossing signal; (2) that such failure, if it existed, was not the proximate cause of the accident; and (3) that the boy injured was guilty of negligence contributing to his injury.

[1] There was the affirmative evidence of the engineer and fireman that the whistle was sounded and the bell rung. Four witnesses in behalf of the plaintiff below gave the negative testimony that they failed to hear any signal. Those witnesses were variously situated. Their attention was called to the approaching train by the locomotive headlight, and the circumstances were such as to warrant the jury in believing that if the signals had been given they would have heard them. The verdict of the jury determined the fact against the plaintiff in error. Chicago, R. I. & P. Ry. Co. v. Stepp, 164 Fed. 785, 90 C. C. A. 431, 22 L. R. A. (N. S.) 350.

[2] The argument that the failure to give the required signal was not the proximate cause of the accident is based on this: It is said that a boy so oblivious to his surroundings as to fail to notice a brilliantly lighted train would probably not have heard these signals, if given, and hence the accident would still have happened. This argument is strained, and the jury have found otherwise. It was especially a question for the jury to determine the causal relation of the failure to give the signal and the ensuing collision. The evidence does convince that, if the signal had been given, the boy might and ought to have heard it, and affords no reason for an appellate court to say that the jury were clearly wrong in reaching the conclusion that he would have heard it.

[3] Was the evidence of the boy's contributory negligence so conclusive as to require a directed verdict? He testified that, a few seconds before he attempted to cross the railway line, he looked to the east and failed to see the approaching train. The circumstances of

the accident, however, conclusively establish that, if he had looked at any time while the train was within 1,600 feet of the crossing, he could not have failed to see the brilliantly lighted train, and the conclusion must be that a much longer time elapsed after he looked than is to be inferred from his testimony. His attention was attracted by a light to the west, thought by him to be the headlight of a locomotive approaching from that direction. He was a young boy, not yet 12 years old, riding alone at night. If he had been of mature age, his negligence would not be a matter of doubt. As to adults, it is established that the railway line is notice of danger, and that before crossing it the traveler must look and listen for approaching trains. But this rule, definitely prescribing the care to be used under such circumstances, is based on experience of the care ordinarily used by adults. A minor is only required to use the care appropriate to his age, experience, and mental capacity. At tender age no care is to be expected, or is required of him. When closely approaching maturity in many ways he is capable of exercising the care of an adult. Between these extremes the care required of him varies with his age, intelligence, and experience. He is not expected to suddenly emerge from the helplessness of infancy into maturity; and it is usually the province of a jury in a case of this kind to determine the care such a minor would ordinarily use under the particular circumstances. Atchison, T. & S. F. Ry. Co. v. Hardy, 94 Fed. 294, 37 C. C. A. 359; Railroad Co. v. Gladmon, 15 Wall. 401, 21 L. Ed. 114; B. & P. R. Co. v. Cumberland, 176 U. S. 232, 20 Sup. Ct. 380, 44 L. Ed. 447.

Undoubtedly, cases arise where the failure to measure up to the standard of care ordinarily to be expected of minors under similar circumstances is apparent, and many such cases are quoted in the brief in behalf of plaintiff in error. But each case must be determined by its special facts, and in each it must be remembered that the law does not fix the standard as requiring prescribed acts, such as looking and listening as in the case of adults. Here we think the case was not so clear as to justify the court in holding as matter of law that the boy failed to use the care for his own protection that would have been ordinarily exercised by boys of his age, intelligence, and experience. This question was left to the decision of the jury under instructions not excepted to; and this was not error.

Complaint is made that other requested instructions should have been given; but, where they were not sufficiently covered by the instructions given by the court on its own motion, they each involved, and made essential to due care on the part of the boy, the care required of an adult under like circumstances, provided the jury found that the boy had the capacity to appreciate the danger of crossing the railway and had the physical ability to use the required care. These requests entirely ignored the heedlessness natural to boyhood (Plumley v. Birge, 124 Mass. 57, 26 Am. Rep. 645), and they were properly refused.

[4] The trial court, over the objection of the railway company, admitted evidence in rebuttal to the effect that no whistle was blown or bell rung at crossings in Sterling, a town east of the place of ac-

cident, and at McKenzie, west of that place. This evidence was given in this connection: When the engineer and fireman of the train in question testified, they were each cross-examined by counsel for the defendant in error on their statements that the bell had been rung and whistle sounded for the crossing at which the boy was injured, and, for the purpose of testing their memory, they were asked if those signals were also given for the crossings in Sterling and in McKenzie on the night in question. Each said the signals were given for those crossings. On rebuttal, the testimony objected to was admitted, for the reason, as stated by the trial judge, that it bore on the reliability of these witnesses.

There was no issue as to the giving of these signals at Sterling or at McKenzie. Obviously, if they were given, it did not follow that they were given for the crossing at the place of accident; and the converse of the proposition is also true. Independent of its effect to contradict the engineer and fireman, it is apparent that the evidence was irrelevant; and that is the test of collateral evidence. As the matter was entirely collateral, the plaintiff was concluded by the answers of the witnesses on cross-examination. The rule is settled, and the reasons on which it is based are well stated in R. v. Brown, 21 U. C. Q. B. 334, where it was said:

Such questions "arise when counsel in cross-examination of a witness uses a license which the practice allows him of asking a variety of questions having no apparent connection with the matter to be tried. in the hope of involving the witness in some contradiction. He is not, in such cases, obliged to explain the object of his questions, because that might often defeat his object; but he must be content to take the answers which the witness gives to any question that is irrelevant, and is not allowed to call witnesses to disprove the statements he makes in reply, because that would lead to the trial of innumerable issues irrelevant to the case and would distract the attention of the jury. And, besides, which is an even better reason, it would be unsafe and would be unjust towards the witness to infer, from any contradiction that might be given by another witness, that the one who has been cross-examined has sworn falsely and is unworthy of belief, since he could not have contemplated that he would be questioned upon points unconnected with the facts to be tried, and could, therefore, not be expected to be able on a sudden to support his testimony by the evidence of other persons, though it might be perfectly true in itself, notwithstanding the contradiction."

This court has had occasion to declare and enforce the rule. Safter v. U. S., 87 Fed. 329, 31 C. C. A. 1.

It was error to admit this testimony, and for this the judgment must be reversed, and the case remanded for a new trial; and it is so ordered.